SAUITUFUGA of Nua, UTU of Ofu, LAUMAU MOEOLO of Ofu, TAKE SUNIA of Pavaia'i, FENUNUIVAO FAOA of Ofu, ROPATI SU'EUGA of Pago Pago, TAMAALEVE'A of Ta'u, PITA MALAE of Ofu, MALAETI'A TUFELE of Ofu, FAAILI of Ofu, Plaintiffs

v.

TAUSULU of Ofu, Defendant

No. 17-1952

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Matai Name: "Misa" of Ofu]

November 29, 1952

---

OPINION AND DECREE ON REHEARING

Heard at Fagatogo October 16, 1952 to October 30, 1952 before MORROW, *Chief Justice* and ALO SEMANU and FUATA, *Temporary Associate Judge[s]*.

Atufili and Tago for Sauitufuga; Malaeti'a *pro se;* Lutu and Tali for Tausulu; Atofau for Faaili.

OPINION OF THE COURT

MORROW, *Chief Justice.*

The Court granted a rehearing in this case because of its belief that there had been certain irregularities in the procurement of the original decree. At the rehearing the testimony was different in many respects from that given at the original hearing. In fact a considerable amount of the testimony on the second hearing was in direct conflict with testimony which the Court had before it on the first hearing. The only parties participating in the rehearing were candidates Tausulu, Sauitufuga, Malaeti'a and Faaili.

This case involves the determination of which of these four shall be registered as the holder of the matai title

50

Misa of Ofu. Tausulu filed his application with the Registrar of Titles to be registered as the Misa on December 12, 1949. The other three filed objections and became candidates for the name. There were other objectors but we shall not notice them since they are not parties to the rehearing.

Section 926 of the A. S. Code, as it read prior to March 17, 1952, when it was amended prescribes the qualifications for eligibility to hold a matai title applicable in the instant case. The amendment provided that it should not apply to pending cases. This case was pending on the date of the amendment. All of the above four candidates have the necessary qualifications. One of the requirements of said section is that a matai must have at least one-half Samoan blood in his veins. A question was raised as to whether candidate Tausulu complied with this requirement since he has some Tongan blood in his veins. Suffice it to say that his Tongan ancestor was so remote in his chain of ancestors that Tausulu has only an insignificant amount of Tongan blood, and has much more than the required one-half Samoan blood. He is eligible to hold a matai title.

Section 933 of the A. S. Code, prior to an amendment thereto dated October 8, 1952, read as follows:

"In the trial of matai name cases, the High Court shall be guided by the following in the priority listed:

(a) The wish of the majority or plurality of the family;

(b) The forcefulness, character, personality and capacity for leadership of the candidate;

(c) The best hereditary right in which the male and female descendants shall be equal in the family where this has been customary, otherwise, the male descendant shall prevail;

(d) The value of the holder of the matai name to the Government of American Samoa."

The amendment of October 8, 1952 provided that it should "not apply to any cases pending on the effective date" thereof. The instant case was pending on the effective date

of the amendment. The amendment, therefore, has no application to this case.

Sauitufuga, Tausulu, Malaeti'a and Faaili each filed a petition with the Court purporting to be signed by those members of the Misa family supporting his candidacy for the title Misa. In view of our findings on the second, third, and fourth issues, it is not necessary for the Court to make a finding on the first issue, i.e. the issue of the wish of the majority or plurality of the family. A candidate who prevails on the second, third and fourth issues must be awarded the title over a candidate who prevails on the first issue only. In *Gi v. Maaele*, No. 26-1949 (H.C.Am.S.) a case involving the right to the matai name Mageo we said: "A candidate who prevails on the second, third and fourth issues must be awarded the title over a candidate who prevails on the first issue only. See *Maile, Pua and Epati v. Fa'aaliga Si'i*, No. 21-1949 (Am.S.). It is obvious from Section 933 supra that the Court must give more weight to the second, third and fourth issues combined than to the first issue relating only to the wish of the majority or plurality of the family."

While it is not necessary for the Court to make a finding on the first issue, nevertheless we point out, in passing since it has a hearing upon character, that Sauitufuga's petition had on it the names of 78 persons who signed twice and of 5 who signed three times. It also contained the names of 2 who were in Honolulu at the time of their supposed signing in Tutuila 2500 miles away. Obviously their signatures were forgeries. The Court must seriously question the character of a candidate who relies upon and presents to the court a petition permeated with so much falsity. Malaeti'a's petition contained the names of two dead people and there was testimony indicating that some of the signatures on his petition were forged. The testimony was in serious conflict as to whether signers on the various pe-

titions were members of the Misa family. Tausulu testified that all of the signers on the petitions of the other three candidates were not members. On the other hand each candidate testified that all the signers on his petition were members. Each candidate also testified that certain members of the family who did not sign any of the petitions favored his candidacy.

There were 735 signatures on Sauitufuga's petition, 606 on Malaeti'a's, 500 on Faaili's and 252 on Tausulu's. The large number of signatures on Sauitufuga's, Malaeti'a's and Faaili's petitions casts a cloud of suspicion upon them. We said in the Leiato title case, No. 4-1952 (H.C.Am.S.) "There are a little over 19,000 people in all of American Samoa. There are about 700 matais in these islands. No person under the age of 14 years signs a petition. At the very minimum thirty per cent of the population is under 14. Using that figure there are not over 14,000 people in American Samoa of 14 years of age or above. Counting the number of matais at 700, we have an average of only 20 people of 14 years or over to a matai. We, of course, know that the same person may and does belong to a number of families. We also know that many families have more than one matai." After making allowance for the fact that a person may belong to a number of families in accordance with Samoan custom and that families may have more than one matai, and allowing for the fact that the Misa family may be a large one, we are convinced, nevertheless, that hundreds of the signers on Sauitufuga's, Malaeti'a's and Faaili's petitions are not members of the Misa family. It should be added that there was much direct testimony in support of this conclusion. And we think from the evidence also that a number of the signers on Tausulu's petition are not members. However, we are convinced that a much higher proportion of the signers on his petition are true family members than on the petitions of the other three

candidates. But we shall not make a finding on the issue of the wish of the majority or plurality of the family, since, as heretofore stated, it is not necessary.

We shall now consider the issue of "forcefulness, character, personality and capacity for leadership of the candidate." There is much evidence before the Court on this issue that was not before it when the case was first heard in Ofu. With respect to character it should be stated that candidate Malaeti'a's record in District Court No. 1 shows that he pleaded guilty to the charge of larceny on August 30, 1940 and was sentenced to pay a fine with an alternative jail sentence if the fine should not be paid, and that on July 7, 1942 he pleaded guilty to another charge of larceny and was sent to jail for two months. On August 30, 1943 he was found guilty of burglary and sentenced to one year in Jail. Malaeti'a, now 32 years old, was 23 years of age when sent to jail for burglary. He graduated from the Marist Brothers' School, completing the 9th grade. He had religious instruction after school hours while attending school. He speaks English very well. Malaeti'a worked as a clerk for the Public Works Department and later in the same capacity for Samoan Industry. He has also worked as a clerk in the legislative office. He resigned in August 1952 from his position in that office and went to Ofu to live. At one time he worked as a crane operator. He has been an official recorder at a number of ceremonies. He testified that he has an income of about $3.00 a day from cutting copra while aigas give him about $110.00 a month. He was a choir leader of Atu'u village in Tutuila during a part of 1952. With the exception of his early boyhood and the last three months spent in Ofu he has spent practically all of his life in Tutuila, making only an occasional visit to Ofu. Consequently he has little familiarity with the affairs of the Misa family in Ofu. While there he lives with the Velega family, not the Misa family. He does not have planta-

tions on Misa land nor has he ever lived in the Misa family. Malaeti'a did not render service to the Misa title, though he claims that his father did.

Candidate Tausulu, 37 years old, completed 6 grades in the Marist Brothers' School. He speaks English brokenly. He has plantations on Misa family lands, and has rendered a large amount of service to the Misa title. During the war he worked for Public Works in Tutuila, first in a power plant and later in a lumber yard. He also worked for some-time during the war, he has spent practically all of his life in Ofu where he was born. He is very familiar with the affairs of the Misa family. He has some income from copra and in addition about $225.00 a month given to him by his brothers in the U.S. military service. He formerly operated a small store in Ofu. It is our conclusion from the testimony and our observations of the two candidates during the hearing that Tausulu prevails over Malaeti'a on the issue of forcefulness, character, personality and capacity for leadership.

Candidate Sauitufuga, 38 years old, completed the 8th grade in the Marist Brothers' School. He has a good command of English. He is a machinist in the ice plant operated by the Public Works Department. He has held this job for the last thirteen years. For five years prior to taking his present job he worked as a storekeeper for Burns Philp (SS) Co. He has held a matai title for about $4^{1}/_{2}$ years. His salary as a machinist is $107.17 a month. He has an income of about $40.00 a month from other sources. Sauitufuga has a pleasing personality. The fact that he foisted a petition on the court with 78 names signed twice, 5 signed 3 times and also containing some forgeries compels us to question his character. There was convincing evidence that a little over a year ago he brought a bottle of whiskey into American Samoa in violation of customs regulations and that he had possession of it in violation of law. The testi-

mony of a customs official that he did not personally search Sauitufuga's trunk containing the liquor and that customs clerks did not report finding hard liquor in his baggage does not mean that Sauitufuga did not bring in the liquor illegally. It merely means that no liquor was found by those charged with the duty of searching baggage. Furthermore there was no proof that his baggage was searched, although it was supposed to have been. When questioned during the first hearing of this case as to whether he (Sauitufuga) had ever lived in Ofu, he answered "about fifteen years." This time he testified that it was five years while he was a school boy. He claimed to have progressed two grades in school during those five years. We think that he did not live in Ofu (there was testimony that he had never lived in Ofu at all) more than two years and that his testimony during the first hearing on his residence in Ofu misled the Court. Sauitufuga was born in Masefau. Having lived in Tutuila practically all of his life Sauitufuga has rendered very little service to the Misa title. He has little knowledge of the affairs of the Misa family. He has never lived on Misa land.

Sauitufuga was awarded the Misa title by the Court after the first hearing. He was not able to consolidate the family into an harmonious unit. As witnesses stated, the family "chased him out." Just after he was awarded the name, he took the late Misa Vaeva's daughter's body from Tutuila to Ofu for burial. He stayed two days trying to consolidate the family, then came back to Tutuila and has never been back to Ofu since. Several months prior to the Clerk of the Court's giving out petitions in blank for the candidates to have signed by those members of the Misa family favoring their respective candidates, Sauitufuga had a petition circulated in his behalf. This was not illegal, but it was an effort to secure an unfair advantage over the other candidates. A man who will take an unfair advan-

tage of his opponents in a matai name case would not be above taking an unfair advantage of family members, if a matai. Such conduct would impair his usefulness as a leader of a Samoan family. While Sauitufuga has a pleasing personality, nevertheless, in view of the evidence on the second hearing (and it was considerably different in a number of respects from that adduced on the first hearing) and our observation of the candidates, we conclude that Tausulu prevails over Sauitufuga on the issue of personality, forcefulness, character and capacity for leadership.

Candidate Faaili, 37 years old, was born in Olosega and lived on that island until he went to Ofu shortly before the war to live in the Misa family. He finished the 6th grade in school and speaks broken English. He has rendered considerable service to the Misa title. He operates a small store in Ofu from which he testified he makes a profit of about $320.00 a month. When the first hearing was had in Ofu he testified that his profit from the same store was only about $20.00 a month. He has plantations on Misa land. Faaili is the policeman for County Chief Faoa. He worked on a road-gang for two years in Tutuila. During part of the war period he worked as a stevedore unloading war supplies from ships in Pago Pago harbor. He testified that he also worked as a rigger during the war but there was an indication that instead of being a rigger he was a water-boy. Faaili dived 30 or 40 feet into the sea and recovered the body of a drowned U.S. Marine. This act took courage and skill. Faaili testified that he had a total income of more than seven hundred dollars a month, a small part of it being given to him by aigas. We think that his real income is very much less than he claimed. The Court had an opportunity to compare the personalities of Faaili and Tausulu during the hearing. It is our conclusion from the evidence and our observation that Tausulu prevails

over Faaili on the issue of forcefulness, personality, character and capacity for leadership.

Candidate Tausulu is without question the grandson of Misa Poto. He has one-fourth Misa blood in his veins.

There is very grave doubt as to whether candidate Faaili has any Misi blood in his veins. He claims to be the great-great grandson of Misa Logona and to have one-sixteenth Misa blood. However, we think that the evidence preponderates in favor of the view that Misa Logona never had any children and that Faaili instead of being a descendant of Misa Logona is a descendant of Misa Logona's sister Faafo'i. Molipe, 70 years old and the only living chief in the Misa family, testified that Logona had no children, as did a number of other witnesses. However, even if it be conceded that Misa Logona did have children and that Faaili is one of his descendants, and has one-sixteenth Misa blood, nevertheless Tausulu, who has one-fourth Misa blood, prevails over Faaili on the issue of hereditary right.

Candidate Sauitufuga claims to be the grandson of Misa Palaita. While there was considerable evidence indicating that there never was a Misa Palaita, nevertheless we believe that the evidence preponderates in favor of the view that there was a Misa Palaita but that he lived and died many years before the establishment of the Government in American Samoa in 1900. Misa Vaeva testifying in the case of *Palaika v. Misa*, No. 22-1913 (H.C.Am.Samoa) testified that the Misas, starting from the first and continuing in the order of succession, were Misa Alefua, Misa Tuimalie, Misa Vaepala, Misa Maiava, Misa Palaika, Misa Logona, Misa Puniuea, Misa Poto, Misa Elia and Misa Vaeva. We think that Vaeva would not have included a Misa Palaita in the list of Misas unless Palaita had held the title. It is unquestioned that Suiaunoa, who was a plaintiff together with Alesana (now witness Molipe heretofore re-

58

ferred to) in High Court Case No. 16-1919 involving the land Toaga on Ofu was the father of candidate Sauitufuga. In that case Suiaunoa testified that "Misa Palaita married Finau the daughter of Sootoa of Ta'u. They had a child named Siva my father." Suiaunoa was then asked "Your true father?" to which he answered "Yes." It is quite clear from Sauitufuga's own father's testimony in that case that Siva was the grandfather of Sauitufuga and that Misa Palaita was his great-grandfather. Molipe, who is 70 years old and the only living chief in the Misa family as we have stated, testified that Suiaunoa's father was Siva. This accords precisely with the testimony of Suiaunoa (Sauitufuga's father) himself in the 1919 case. On cross-examination Sauitufuga was asked "Palaita is the father of your grandfather. Is that correct?" He answered "Yes." Then he was asked by the Court: "Palaita is the father of your grandfather. Was that what you say?" And to this question Sauitufuga answered "Yes." Later he changed his testimony, saying that Palaita was his grandfather.

We are convinced from the evidence that Misa Palaita was not Sauitufuga's grandfather and that Siva was his grandfather. If Misa Palaita was the father of Siva, and we believe he was, then Sauitufuga has one-eighth Misa blood in his veins, and we so conclude from the evidence. It follows that Tausulu with one-fourth Misa blood prevails over Sauitufuga on the issue of hereditary right.

There is strong circumstantial evidence indicating that Misa Palaita died a good many years before Sauitufuga's father was born thereby making it impossible for Misa Palaita to have been the father of Suiaunoa who was the father of Sauitufuga. Sauitufuga is 38 years old and was born in 1914. According to the testimony of Sauitufuga's brother, their father died in 1931 when about 60 years of age. If that testimony be true, and we believe it is, then Suiaunoa was born about 1871. Elia was the Misa when the

government was established in 1900. He was put on the Misa throne by Tuimanu'a Alalamua. When the government was established in 1900 the Tuimanu'a was Elisara. The historical evidence (and we take judicial notice of historical facts. 31 C.J.S. 637) is to the effect that there were two Tuimanu'a's [sic] between Tuimanu'a Alalamua and Tuimanu'a Elisara. Now according to Vaeva's testimony in the *Palaika v. Misa* case, supra, there were three Misas, viz: Logona, Puniuea and Poto after Misa Palaita and before Misa Elia. The evidence indicated the Misa Palaita held the title until he died. From 1871 when Sauitufuga's father Siuaunoa was born until 1900 when the government was established is only 29 years. Assuming that Palaita died a year before Suiaunoa's birth in 1871, and in the nature of things he could not have died any earlier than that and still have been the father of a child born in 1871, it would follow that not more than thirty years elapsed between Palaita's death and the establishment of the government in 1900. That there were three successive mataiships followed by two kingships, all within the short space of thirty years, is obviously highly improbable.

Malaeti'a has one one-hundred-twenty-eighth Misa blood through his mother. He claims that there was a Misa Iosefa and that he is the grandson of Iosefa through his father Tufele. Despite his claim the evidence clearly preponderates in favor of the view that there never was a Misa Iosefa. Molipe who is familiar with Misa family tradition testified that Iosefa, Malaeti'a's grandfather, was not a Misa. Iosefa was a faifeau which is a strong circumstance indicating that he did not hold a matai title. Iosefa died in Atu'u in Tutuila, and was buried there. Later his remains were taken up and reburied in Fitiuta. If he had ever been a Misa his remains would have been buried in accordance with Samoan customs in the land Lagi on Ofu where other holders of the Misa title are buried. Samoans

60

bury their matais on family land. They do not bury them in land on another island. Iosefa was a faifeau in Fitiuta. When Misa Vaeva named the former Misas in his testimony in the *Palaika v. Misa* case, supra, he did not include Iosefa as one of the Misas. We believe that the Misa blood in Malaeti'a's veins is limited to the one one-hundred-twenty-eighth part derived through his mother and we conclude that Tausulu with one-fourth Misa blood in his veins prevails over Malaeti'a on the issue of hereditary right.

However, if we take Malaeti'a's claim as true that there was a Misa Iosefa and that Malaeti'a is his grandson we would still reach the conclusion that Tausulu prevails over Malaeti'a on the issue of hereditary right. Malaeti'a testified that Iosefa held the title Misa jointly with Elia for two or three years beginning in 1890. If Iosefa did hold the title jointly with Elia, then Iosefa had only an undivided half interest in the title and could pass to his son, now Tufele Faiaoga, Malaeti'a's father, only one half as much hereditary right as he would have passed had he held the title alone all of which means that Malaeti'a would have only one half as much hereditary right derived from his grandfather Iosefa as Tausulu has derived from his grandfather Misa Poto who held the title singly. Even if Iosefa had been a Misa (and we are convinced he was not) holding the title jointly with Elia, Malaeti'a would have only seventeen one-hundred-twenty-eighths Misa blood in his veins which is less than Tausulu's one-fourth. However, our decision on the issue of hereditary right is based upon our conclusion that Iosefa did not hold the title at all, and not on the theory that he was a joint holder with Elia. We want that clearly understood. Consequently anything we may have said about hereditary right through joint holding of a title should be understood as dictum only and that it is not binding on the Court as a precedent.

61

We believe from the evidence, and we so find, that Tausulu prevails over Malaeti'a, Faaili and Sauitufuga on the issue of the value of the holder of the matai name Misa to the Government. We have said in prior cases that the value of a matai to the Government depends in a very large measure upon the skill with which he handles the affairs of the family, and that in turn depends upon his forcefulness, personality, character and capacity for leadership. Since we found that Tausulu prevails over the other three candidates with respect to these matters, we conclude, as the holder of the Misa title that he will be of more value to the government than any one of the other three.

Since Tausulu prevails over Malaeti'a, Sauitufuga and Faaili on the second, third and fourth issues it follows that he must be awarded the matai name Misa of Ofu.

DECREE

Accordingly the decree dated May 3, 1951 awarding the title Misa to Sauitufuga is hereby set aside and annulled, except the part thereof assessing costs. And it is ORDERED, ADJUDGED and DECREED that Tausulu be registered as the holder of the matai name Misa of Ofu. The Registrar of Titles will be advised of this decree.

The costs aggregate $225.00 of which sum $75.00 is hereby assessed against each of the following: Sauitufuga, Malaeti'a and Faaili. All costs are to be paid within 60 days.